Rogers *vs.* Ball.

---

G. C. ROGERS, plaintiff in error, *vs.* JAMES M. BALL, defendant in error.

1. There may be an accord and satisfaction of a right of action for usury paid, even though the sum advanced on such an agreement be less than the usury received, provided it be paid and accepted as a full discharge of the borrower's claim.

2. A mere deduction at the time a debt is settled, of a part of the usury included in it, does not amount to such accord and satisfaction, although so agreed by the parties.

3. But if the payment be in property, at an estimated value greater than the debt, with a further addition to the price on an agreement that the advanced price is in satisfaction of the borrower's claim on account of usury, and the creditor gives his note for such excess over the debt, including the advance put on the price, and afterwards pays the note to the borrower, such subse-

quent payment and acceptance will be equivalent to an accord and satisfaction agreed upon and executed by the parties at that time.

Usury. Accord and satisfaction. Debtor and creditor. Settlement. Before JOHN COLLIER, Esq., Judge *pro hac vice.* Fulton Superior Court. April Term, 1874.

This was an action brought to recover usury paid by plaintiff to defendant. A bill of particulars was annexed to the petition, as follows:

ATLANTA, GEORGIA, September 14, 1867.

MR. J. M. BALL, *in account with* G. C. ROGERS.

| 1866. | DR. | CR. |
|---|---|---|
| May 12. By interest on $3,000 00 from February 2, 1866, at 7 per cent. per annum . . . . | | $ 58 33½ |
| May 12. To interest on $3,000 00 from February, 1866, at 5 per cent. per month . . . . $ 500 00 | | |
| June 12, 1867. By interest on $4,000 00 from May 12, 1866, at 7 per cent. per annum. . . | | 326 66⅔ |
| June 12, 1866. To interest on $4,000 00 from May 12, 1866, at 5 per cent. per month. . . 2,800 00 | | |
| May 28, 1867. To amount of bill rendered . . . . 8 50 | | |
| Oct. 11, 1866. To amount of bill Hunnicutt & Bellingrath . . . . . . . . . . . . . . 137 37 | | |
| Oct. 4, 1866. To amount of bill Hunnicutt & Bellingrath . . . . . . . . . . . . . 66 48 | | |
| Dec. 6, 1866. To amount of bill Hunnicutt & Bellingrath . . . . . . . . . . . . . 2 50 | | |
| Nov. 27, 1866. To amount paid gas company, value fixtures . . . . . . . . . . . . . 19 36 | | |
| Oct. 5, 1866. To amount paid W. Forsyth, window bars. . . . . . . . . . . 21 00 | | |
| June 3, 1867. To amount collected for rent of store. 25 00 | | |
| June and July. By two months rent of store, at $83 33⅓ per month . . . . . . . . . | | 166 66⅔ |
| | $3,580 23 | $551 65 |

Balance due. . . . . . . . . . . . . . . . . . . . . $3,028 58

The defendant pleaded the general issue, accord and satisfaction and payment.

G. C. Rogers, the plaintiff, stated that he borrowed at two different times $4,000 00 from Ball; that he borrowed first time, in February, 1866, $3,000 00; that he paid interest

on this at five per cent. per month; that in about three months afterwards he borrowed $1,000 00 at same rate; that he paid Ball $200 00 per month as interest, to the 1st June, 1867, except the last two months, which he did not pay until they settled, on the 12th of June, 1867; that he sold to Ball his brick building on Marietta and Broad streets for $6,500 00; that the fixtures were not all paid for, and Ball was to settle for them; that he (Rogers) asked $7,000 00 for the property; that Ball got the fixtures. (Rogers here proved the items of fixtures as shown by bill of particulars.) That when he sold the building to Ball it was worth $10,000; that he sold so low to settle up and get rid of defendant; that all the items as charged in the bill of particulars were correct.

The plaintiff then read in evidence the agreement of Rogers and Ball in regard to fixtures, and closed his case.

The defendant proved by himself that he made a settlement of all matters between Rogers and himself on the 12th of June, 1867; that he bought plaintiff's brick store-house for $6,000 00; that plaintiff demanded a settlement of the usury matter, and said he had consulted a lawyer, and defendant agreed to pay him, plaintiff, $500 00 as a settlement of the usury question; that he paid plaintiff this amount in green-backs, making in all that he agreed to pay plaintiff $6,500 00, which was in full settlement of everything; that he took plaintiff's receipt for the same, which is as follows, to-wit:

"STATE OF GEORGIA—Fulton County.

"For and in consideration of five hundred dollars cash in hand paid us this day by James M. Ball, we hereby absolve the said Ball from all obligation to us on account of any illegal or usurious interest we may have heretofore paid said Ball upon any loans of money made to us, or otherwise. This June 12, 1867.        (Signed)

"G. C. Rogers,
"Wm. L. Cleveland, M. D."

Defendant also proved by himself that this receipt did not bear the correct date, but that it was signed on the 19th of June, 1867, instead of the 12th of June; that he required Cleveland also to sign the receipt, because Cleveland's name had been upon the notes; that the deed was made by the plaintiff to defendant on the 12th of June, and then delivered; that on that day defendant delivered up to Rogers his two notes, one for $3,000 00 and one for $1,000 00, and also delivered up to Cleveland his (Cleveland's) note for $1,000 00, which made $5,000 00 of the purchase price; that the deed was made for $6,000 00; that the settlement was friendly and harmonious; that Rogers only asked $6,000 00 for the property; that the $500 00 was paid Rogers in currency; that at the same time he gave Rogers a due bill for $1,500 00, not transferable; that he paid this note and took receipt for $500 00 on the 19th; that the note for $1,500 00 was not the balance of the purchase money on the building; that the purchase money was $6,000 00; no one present when he paid the $500 00; that Cleveland went out before the money was paid; that on the 19th of June the money and note were paid; that Rogers stated that his lawyer said for $500 00 he would get the money out of him; that he did not consider that very friendly, but considered it harmonious.

(Record of deed from Rogers to Ball was exhibited.) Ball then stated that the deed did not show the true consideration. The consideration was $6,000 00.

Frank Rice proved that in June, 1867, the building was worth $5,000 00; that after this time, when Ball and Cleveland went to settle, the building was valued at $5,900 00 or $6,000 00; that was four years ago.

J. C. Peck stated that the building was worth, in 1867, $5,000 00; property not worth as much in 1870, when assessed to Cleveland, as when Ball bought it.

Ezra Andrews stated that his recollection was that Rogers asked $5,000 00 for the property in 1866; is not certain if Rogers' offer of $5,000 00 was for half the building or for the whole building—it may have been for the half; Rogers

Rogers *vs.* Ball.

said the building cost him $10,000 00 ; mind not clear ; impression of witness is that Rogers realized $6,500 00 in trade with Ball.

Defendant read in evidence the following receipt :

"ATLANTA, June 12, 1867.

"$1,500 00.   Due G. C. Rogers fifteen hundred dollars, for value received.   Not transferable.

(Signed)          "JAMES M. BALL."

Indorsed as follows :

"June 12, 1867.   Received on the within two hundred dollars.              (Signed)              G. C. ROGERS."

"Pay Wm. L. Cleveland, M. D , or order.

(Signed)              "G. C. ROGERS.

"June 18, 1867."

Defendant also read in evidence a statement in figures of the amount of money loaned Rogers by him, giving the credits to the different payments, and deducting the same from the principal at the time the payments were made.   This statement of defendant shows a balance of the principal due and unpaid at the date of the settlement, on June 12, 1867, of $1, 813 14.

PLAINTIFF IN REBUTTAL.

G. .C Rogers stated as follows: He sold the property to Ball for $6,500 00.   They split on $7,000 00, and agreed on $6,500, and Ball to pay for fixtures.   The store-rooms rented for $100 00 each, two front rooms up-stairs at $20 00 each, and six other rooms at $10 00 each.   The building cost between $10,000 and $12,000, and he had offered half of it for $5,000 00.   The receipt for $500 00 was drawn after they made the trade.   Ball said it was merely for form ; Ball asked Cleveland and plaintiff to save him from unlawful interest ; never paid him a dollar ; never paid a cent on it.   Cleveland was present at the time, and for one hour after Ball had left ; no consideration for the receipt.   The building was worth less in 1870 than when Ball got it in 1867, as Ball did not keep the building in repair.

William L. Cleveland testified as follows: He signed the receipt; when the settlement between Ball and Rogers was concluded Ball presented that paper; witness objected to signing it; Ball said it was a mere matter of form. After some parley, Rogers and witness went into the back room and signed the receipt. Not one cent was paid, not one cent ever meant to be paid; if there had been witness would have refused the receipt in toto. Both Ball and Rogers said positively at the time that $6,500 was the price agreed on for the house; usury never was mentioned while the trade was going on; witness owned the lot the building was on. Witness cannot be mistaken about the price, because it was stated positively by both, in presence of each other. Rogers frequently spoke of the building as having cost him $10,000 or $12,000. After the lease expired witness took possession. The building was valued by arbitration; Ball wanted $10,000 00 for it, from the way he talked; Ball insured it for $8,000 00, and said it was worth, more than that. Ball required witness to pay insurance at the rate of $8,000 00. The building was much depreciated from the time Ball received it down to the time witness received it, for want of repair. Ball went out after the receipt was signed, and witness remained in the house fully one hour afterwards. The house rented from $2,400 00 to $3,000 00 per annum. Witness paid Ball for the building, in November, 1870, $5,900 00.

The copy of a deed from Rogers to Ball for the building was read in evidence. The original was not produced by Ball, who testified that he did not have it in his possession.

This deed bears date the 12th of June, 1867, and expresses on its face the consideration of $6,600 00. Also, the written assent of Cleveland to deed of Rogers to Ball.

Plaintiff then read in evidence the receipt of James M. Ball, per H.'S. Edwards, for $875 00, to W. L. Cleveland, in full for fixtures. Plaintiff also read in evidence the receipt of James M. Ball to W. L. Cleveland for $5,900 00, in full for the building.

J. M. Ball, reintroduced, stated that he let Cleveland have

Rogers *vs.* Ball.

the buildings about December 1, 1860, for $5,900 00, exclusive of fixtures, the fixtures being counters, iron safe, door, etc. Cleveland was not present when he bought from Rogers, nor did witness ever tell him afterwards that he bought for $6,500 00. The deed was written by witness; carried it in his pocket some time, and when the amount was fixed, carried Wellborn, the notary public, around; he went in and witness filled out the blank in the deed of $6,600 00, and did it by accident; took the instrument with the intention of writing $6,000 00; recollects the conversation; begun to write, and wrote sixty, and it did not look right, and although he knew the consideration of the purchase was $6,000 00, and as he frequently had it expressed differently in a deed from the true consideration, wrote six after sixty, and let them remain, as he considered it unimportant; was late when witness took receipt; on the evening of the 19th of June, 1867; Rogers called on Cleveland for note; Cleveland pulled it out and witness paid it; Rogers said it would be a great favor to settle on that evening; he was going to New York; Cleveland left as soon as the receipt was signed.

The jury found for the plaintiff $150 00 for fixtures, but for the defendant as to the usury. The plaintiff moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in refusing to charge the jury as follows: "That if there be a dispute, *bona fide,* as to whether or not any particular contract is tainted with usury, that the parties may, by accord and satisfaction, settle that dispute, but the payment of the usury is not such a settlement. It must appear that there was a *bona fide* dispute, uncertainty, doubt as to the existence of the usury; that the parties must have that doubt, dispute, distinctly in view in the settlement, and the resolution of the doubt must be a point in the settlement."

2d. Because the court erred in charging as follows: "That defendant says it has been satisfied and discharged, look to the testimony and ascertain whether or not there was any accounting between the parties for the payment of usury, if any was paid; ascertain whether or not the parties came to an

accord and agreed on a discharge of the liability. That would be something like the following instance :

"Suppose I owed one of you $500 00, or $1,000 00, and I come to you and ask you to take less than the whole amount, and you agree to it and accept it, and it is paid and accepted in good faith and in satisfaction of the whole amount; that would be an accord and satisfaction, and would bar your right to recover anything more; but for this purpose there must be an agreement of the minds of the parties.

"In this case, ascertain if Ball was indebted to Rogers for usury; if so, how much? Then ascertain if Rogers and Ball agreed that that amount should be settled for any amount, and if so, what amount? And was it the intention of the parties at the time, if such settlement took place, that the settlement should be in full satisfaction of the claim of usury, if such usury had been paid?

"See whether there was such accord and satisfaction under the rules I have given you; if there was, that would operate as a discharge of the debt.

"A proposition to release the debt without payment of the consideration, or something else equivalent to a payment, would not be a discharge."

The motion was overruled and the plaintiff excepted.

REUBEN ARNOLD; HILLYER & BROTHER, for plaintiff in error.

L. E. BLECKLEY; A. W. HAMMOND & SON, for defendant.

TRIPPE, Judge.

1. An agreement by a creditor to receive less than the amount of his debt, if it has been actually executed by the payment of the money, is an accord and satisfaction : Code, section 2881. We do not see why this should not apply to the case of a claim by one person against another for usury paid by the former to the latter.

2. A mere deduction made by a creditor at the time a debt

Rogers vs. Ball.

is settled of a part of the usury included in it, does not amount to an accord and satisfaction, even though it be agreed by the parties that the deduction is to be in satisfaction of the borrower's rights, founded on the usury.   The borrower is still, in the eye of the law, *in vinculis*, when such agreement is made.   His creditor still holds the rod over him, and the usurious claim is outstanding when his consent is given :  See Schroepel *vs.* Corning, 5 Denio, 236.

3.  And this might be true if the usurious debt be paid in property, even though an addition is put upon the price thereof, on an agreement that the advanced price is in satisfaction of the borrower's claim on account of usury, provided such addition to the value or price of the property is not equal to the amount of usury in the debt.  If it were not so equal to the usury, it would practically be equivalent only to a deduction of a part of the usury.   For if the whole debt were $1,500 00, of which $500 00 was usury, and the creditor took property worth by agreement $1,400 00, at the price of $1,600 00, it would be nothing more than a remission of $200 00 of the debt, leaving $300 00 of the usury which had been paid in the transaction.  But if such property be estimated as worth in real value $1,600 00, and it is agreed that the creditor shall give the debtor $1,800 00 for it in satisfaction of his debt and of any claim for usury paid, and the debtor's note is surrendered, and he takes the creditor's obligation for the $300 00 in excess, and subsequently carries out this agreement by receiving the money for the creditor's note, it would be the same as if he, the debtor, did at that time accept $200 00 in accord and satisfaction of all the claim for usury paid; that is, it would be as if the debtor had paid $500 00 of usury, and afterwards made the accord and satisfaction.   The debtor would not then be in duress, for he would have become the creditor.   It might be that he would not be bound by the contract before the $300 00 was paid to forego any claim for the other portion of the usury; but even if he could repudiate it before payment and assert his full claim, yet he could not fully execute the contract by

receiving the amount agreed on, and then deny the legal effect of it as an accord and satisfaction. If there was a *locus pœnitentiœ* it was lost after full performance on both sides. The right was lost when the money was paid and accepted under a contract that it should be a discharge. A compromise, or mutual accord and satisfaction, is binding on both parties: Code, section 2882, and it becomes binding when it is performed by both. The testimony on this point was contradictory. There was direct and positive evidence on the one side that such agreement never was made, and on the other that it was both made and executed. That was a matter to be decided by the jury. With their finding the judge who tried the case would not interfere, and we do not feel authorized to say his discretion was abused.

Judgment affirmed.