### EDWARDS v. BRYAN.

1. The uncontroverted evidence being that two fi. fas. were to be extinguished as the result of a sale and delivery of a horse by the debtor to the creditor, it was error to charge the jury upon any hypothesis as to extinguishing one of the fi. fas. only.
2. Where an insolvent debtor sells and delivers property to his creditor on an agreement that fi. fas. covering the debt are to be extinguished and that the debtor is to give his promissory note for the difference between the agreed value of the property and the amount of the debt, the failure to tender a note for this difference will not hinder the extinction of the fi. fas. according to the agreement. The contract was executed so far as delivery of the property and extinction of the fi. fas. were concerned.

December 28, 1891.                    Judgment reversed.

Debtor and creditor. Contracts. Accord and satisfaction. Charge of court. Before Judge MILNER. Catoosa superior court. August term, 1891.

An execution in favor of Bryan against Edwards for $92 principal, with interest and costs, was levied upon property of the defendant, who interposed an affidavit of illegality upon the ground that prior to the levy he had fully settled the execution, together with another execution in favor of the same plaintiff against him, by delivering to plaintiff a horse which plaintiff had received expressly on the consideration that the judgments should be fully settled and extinguished. The jury found for plaintiff; defendant's motion for new trial was overruled, and he excepted. The grounds of the motion were, that the verdict was contrary to law and evidence, and that the court erred in the following charge: "If the proof shows that a horse was delivered by the defendant to the plaintiff in settlement of one of the *fi. fas.* only, and that the defendant agreed to execute and deliver his note for the amount due on the other *fi. fa.*, then it was the duty of defendant to have executed and delivered such note to the plaintiff for the amount of said *fi. fa.* in order to sustain a plea of accord and satisfaction to the *fi. fa.* levied in this case; and if you find that the defendant was to do this and has failed, then it would be your duty to find for the plaintiff and against the illegality filed in this case." It was insisted that this charge was error because there was no evidence upon which to base it.

The plaintiff introduced both the executions. That which was not levied was produced by defendant under notice. It was for the sum of $100 principal, with interest and costs, and contained an entry of transfer, for value received, to W. H. Yates, with power to collect the same, on April 13, 1887. The evidence for defendant was: In the spring of 1887, he and plaintiff made an agreement by which both the executions were settled. Defendant at that time could not pay him the amount due on the *fi. fas.*, having no property except a mule

and household property.  Plaintiff proposed that if he would arrange to pay $100 on the indebtedness, plaintiff would settle the two *fi. fas.* on defendant and would take defendant's note for the balance due him, and if defendant ever got able to pay him, all right, if not, it would be all right.  Defendant told him he thought he could arrange to get a horse from Yates, and if so, would let him (plaintiff) have the horse on this indebtedness at $100, provided he would settle both the executions.  To this plaintiff agreed.  Defendant arranged with Yates for the horse and informed plaintiff.  After this the two and Yates met, and it was distinctly agreed that plaintiff was to take the horse at $100 and the same should go in full settlement of the executions, and that defendant was to give his note to plaintiff for the balance due on this indebtedness, and if he got able at any time to pay him the note, all right, if not, it would be all right.  Plaintiff said he had only one of the *fi. fas.* with him, the other being in the magistrate's office, but he would get it in a few days and give it up to defendant.  The horse was at Yates' house, and defendant told plaintiff to go with Yates and get the horse, and when he got the horse to deliver the *fi. fa.* to Yates for him.  Plaintiff did go, and Yates delivered him the horse, and he delivered one of the *fi. fas.* to Yates.  The horse was defendant's and not Yates', and Yates did not purchase the execution from plaintiff.  When plaintiff got the horse he made the transfer on the *fi. fa.* without any agreement or request from Yates to do so, and no such agreement was made between plaintiff and defendant, or with Yates by any one.  Defendant paid Yates nothing on the *fi. fa.*, and defendant paid for the horse with land Yates got from defendant.  On several occasions plaintiff told Yates that he had not let defendant have the *fi. fas.*, but intended to do so and take defendant's note.  Frequently afterwards defendant saw plaintiff

and asked plaintiff for the other *fi. fa.*, telling him he was ready to give him the note, but plaintiff would give some excuse for not attending to it and it went on in that way, defendant thinking it would be all right and that plaintiff would do as he agreed to do, until the execution was levied. Defendant has been ready to carry out the agreement made with plaintiff all the time, and still is; he never made out any note and offered it to plaintiff, expecting plaintiff to do this, etc.

McCUTCHEN & SHUMATE and PAYNE & WALKER for plaintiff in error, cited Code, §§2878, 2879, 2881, 3713; 9 *Ga.* 224, 240; 13 *Ga.* 406.

R. J. & J. McCAMY, *contra*, cited Code, §2878; Ad. Con. §378.