Graham *et al. vs.* Howell *et al.*

---

JACKSON GRAHAM *et al.*, plaintiffs in error, *vs.* SINGLETON G. HOWELL *et al.*, executors, defendants in error.

1. On the trial of a bill by a surviving partner against the representatives of a deceased partner for an account and settlement of the partnership affairs, the survivor is not a competent witness to testify in his own favor; nor does it alter the case that a portion of the matter in dispute is a Confederate transaction and involves the value of Confederate money, except that the survivor may testify as to the value of said money.

2. When the Judge on a trial charged the jury that, if a creditor agree to receive from his debtor a less sum in satisfaction of a greater, and the less sum is paid him, and he accepts it, the contract is executed and he cannot treat it as a nullity and sue for the balance, and the only evidence of a settlement was the testimony of a witness who swore that the debtor had left with him some money and papers to be given to the creditor, and that he had given them to him:

*Held,* That there was no evidence to justify the charge.

Witness. Partnership. Charge. Settlement. Before Judge RICE. Gwinnett Superior Court. March Term, 1873.

Jackson Graham and Clark Howell filed their bill against Singleton G. Howell and Samuel J. Winn, as executors upon the estate of Evan Howell, deceased, making substantially the following case:

Complainants, as owners of the land on which the western landing of "Warsaw Ferry," on the Chattahoochee river, is situated, were partners with Evan Howell, deceased, who owned the eastern landing, by virtue of a contract between Hampton W. Howell, from whom they purchased, and the said Evan. As such partners they were entitled to share equally in the profits of said ferry from January 1st, 1864, to December 30th, 1865, during which time said Evan received the entire proceeds, amounting to about $20,000 00, in Confederate currency, and about $2,000 00 in United States currency and gold and silver coin. The expense of maintaining and conducting said ferry, for the aforesaid period, was inconsiderable. Evan Howell, during his life, and the defendants, as his executors, since his death, have refused to account for and pay over to complainants their share of the aforesaid profits. Complainants disclaim discovery, and pray an account.

The defendants, by their answer, assert that, during the period aforesaid, the expense of maintaining and conducting said ferry was equal to the profits. They further allege that some time after the year 1865, their testator caused to be made a statement of the earnings of said ferry, showing the amount due to complainants, and deposited the same with the amount due, in the clerk's office of Gwinnett Superior Court, subject to the order of the complainants; that said amount was accepted and received by complainants, by which course they ratified said terms of settlement and are now estopped.

In the course of the trial, the complainants proposed to prove by Jackson Graham (complainant) the following facts: 1st. That he was a joint owner or partner of the ferry, its

franchise and its profits. 2d. His possession of the land on the west side of the river to which the ferry franchise was appurtenant. 3d. That a portion of the account sued for was in Confederate money; what contract existed between him and testator; the value of the Confederate currency. 4th. Under what contract he received the money or papers from M. L. Adair, the agent of Evan Howell, who was then in life.

The Court excluded said witness as incompetent, and complainants excepted.

M. L. Adair, a witness for the complainant, testified as follows: "Some time since the war, does not recollect when, perhaps a year or two after, old man Howell, or Singleton, left with him on deposit, to be paid to Mr. Graham, some money or some papers. Don't recollect the amount, if money. It was something about the ferry. Thinks he sent the money to Graham by his order. May have taken a receipt. If so, it was burnt up with the other papers in the Court-house. There were some papers deposited at the time the money was, but has no recollection of their contents."

The jury returned a verdict for the defendants. Whereupon, the complainants moved for a new trial, upon the following grounds, to-wit:

1st. Because the Court erred in refusing to allow the complainant, Graham, to testify as to the above stated facts.

2d. Because the Court erred in charging the jury as follows: "If a creditor agree to receive from his debtor a less sum in satisfaction of a greater, and the less sum is paid him and he accepts it, the contract is executed, and he cannot treat it as a nullity and recover the balance;" which charge was not authorized by the facts of the case, and was calculated to mislead the jury.

The motion was overruled and complainants excepted.

J. N. Glenn; Clark & Pace; N. L. Hutchins, for plaintiffs in error.

Winn & Simmons; J. P. Simmons, for defendants.

McCay, Judge.

1. There was no error in the exclusion of Graham as a witness. The exception in the Act of 1866 is not that the other party, in the case of the death of one of the parties, shall not testify as to what occurred between the deceased and him, but he shall not "testify in his own favor." This excludes him as a witness. Had the question turned on the inquiry of the *value* of the *consideration* under the scaling ordinance, the exception might not apply. But, it is a mere excuse to say the complainant was hurt by his exclusion on this point. That was proven by the tables, and proven largely in his favor, as the tables give the specie value. If this were the only error, we should let the verdict stand ; for even if he were admissible to show the value of the consideration (and it was in this case for that purpose, only, that he was not excluded under the Act of 1866) his exclusion would not have effected the finding. The tables show a lower value than he could show.

2. But we think it was error for the Court to charge, as he did, on the law of accord and satisfaction. There was nothing in the evidence of the clerk to show any such accord and satisfaction. There was no evidence of any *agreement*. What was the character of the papers, or the amount of money left with the witness, does not appear. Whether there was a statement of accounts, even, does not appear ; much less, is there any evidence of there being a *proposition* to the plaintiff to take a certain sum and the receipt of that sum. The evidence of the witness, in its strongest light, is only that deceased left some money and papers with him, and that he transmitted them to complainants. To infer that this was an agreement and a settlement of accounts, is wholly gratuitous, and the charge of the Court, assuming, as it did, that there was *some evidence* to justify it, was an injury to the complainants. As there was error in this, it is not a sufficient support for the verdict to say that the evidence *justifies* it. That may be, and if there was no error in the Court we would not

interfere.  But how can we say that the jury may not have found on the evidence of the clerk, under the charge ?   The rule is that if there be error in the charge, and the evidence does not *require—demand*—the verdict, a new trial will be granted.

Judgment reversed.