DECIDED FEBRUARY 18, 1931.

*W. W. Dykes,* for plaintiff in error. *Hollis Fort,* contra.

20376. REDMAN *et al.* v. WOODS.

DECIDED FEBRUARY 18, 1931. REHEARING DENIED FEBRUARY 28, 1931.

 

*W. E. Watkins, C. L. Redman, H. M. Fletcher,* for plaintiffs in error.

*Beck & Beck,* contra.

STEPHENS, J. J. E. Woods sued C. L. Redman on a promissory note. The defendant pleaded an accord and satisfaction in that it had been agreed between the parties that the indebtedness, represented by the note sued on, which was for the purchase-money for land to which the defendant held a bond for title, had been satisfied by the defendant's acceptance of an offer of the plaintiff to cancel the indebtedness by surrendering the note to the defendant in exchange for the defendant's return of the bond for title, and that this offer was accepted by the defendant and the possession of the land surrendered to the plaintiff. It appears from undisputed evidence that the defendant received a letter signed by the plaintiff which, after referring to the indebtedness represented by the note, contained a statement as follows: "I suggest an exchange of papers for closing it out." This the defendant construed to mean the cancellation of the indebtedness by his delivering the bond for title to the plaintiff and surrendering the land and receiving in return therefor from the plaintiff the defendant's canceled note. The defendant accordingly, in a letter to the plaintiff, accepted this offer, and followed this up with a tender of the bond for title to the plaintiff. The plaintiff rejected the defendant's offer, and afterwards brought suit upon the note. The court directed a verdict for the plaintiff and the defendant moved for a new trial.

The question is, does this alleged agreement between the plaintiff and the defendant constitute an accord and satisfaction of the defendant's debt? Section 4326 of the Civil Code of 1910 provides that "Accord and satisfaction is where the parties, by a subsequent agreement, have satisfied the former one, and the latter agreement has been executed. The execution of a new agreement may itself amount to a satisfaction, where it is so expressly agreed by the parties; and without such agreement, if the new promise is founded on a new consideration, the taking of it is a satisfaction of the former contract." The agreement between the plaintiff and the defendant was purely executory on both sides. The offer by

the defendant to perform was rejected by the plaintiff. Whether the defendant, under this agreement, had the right to compel performance, there had in fact been no performance on his part. There had been no actual surrender of the bond for title and the land to the plaintiff and an acceptance of the same by the plaintiff. The evidence does not show that the plaintiff had ever accepted possession of the land. It was not expressly agreed by the parties that this executory agreement to cancel the deal and "rue back" should be in satisfaction of the debt. Nor can this inference be drawn from anything in the evidence. The letter signed by the plaintiff, if it can be construed as an offer to settle the indebtedness, certainly contemplates so doing otherwise than by a mere executory agreement by which he obligates himself to deliver up the note in return for the defendant's promise to surrender the land and the bond for title. It could only contemplate a settlement of the plaintiff's obligation represented by the note by an actual surrender of the land and the bond for title. Since the defendant's undertaking to surrender the bond for title and the bond had not been executed, even though execution may have been prevented by the plaintiff, there has been no accord and satisfaction.

If the plaintiff's failure to accept performance by the defendant when tendered amounted to a breach of the contract, the defendant's remedy would not be a plea in accord and satisfaction. He could have no more than a right of action for a breach of this contract. It is not necessary to decide this question here, as the defendant sets up no such breach by way of set-off or counterclaim to the note sued on, and the evidence is insufficient to authorize a finding that the defendant has been damaged by any such breach.

The exact question here presented has been decided by the Supreme Judicial Court of Maine. See White *v.* Gray, 68 Me. 579. The facts of that case were, as stated by Walton, J., in delivering the opinion of the court, as follows: "Plaintiff held a note against defendants for $800. Defendants were insolvent and were endeavoring to compound with their creditors. In consideration of which, the plaintiff agreed that, if their efforts were successful, he would take in payment of his note a lot of land and new notes for $500, payable, one half in one year, and one half in two years. Defendants' efforts were successful, and they offered to settle with the plaintiff upon the terms stated in the agreement; but he refused,

denying all liability under his agreement, and claiming the full amount due upon his note. No deed of the land was ever executed, nor were the notes mentioned in the agreement ever made or tendered to the plaintiff." The court goes on to say: "The question is whether these facts constitute a valid ground of defense to an action on the note. We think not. It is settled law in this State that a defense based on an alleged accord and satisfaction can be sustained only when the accord has been completely executed. Neither an offer to perform nor an actual tender of performance is sufficient. Nothing short of actual performance—meaning thereby performance accepted—will sustain such a defense. The debtor's remedy, if the creditor has wrongfully refused to accept performance, is a separate action upon the agreement. [Citations.] The agreement which, in the case first cited, failed as a ground of defense was successful when made the ground of a separate action. [Citation.] The distinction between an agreement which is per se to satisfy and extinguish an existing debt and an agreement the performance of which is to have that effect must not be overlooked. The former operates as an immediate satisfaction of the debt; the latter only when performed. The agreement set up as a defense in this case is clearly of the latter kind." The same principle is stated by that court in Mayo v. Leighton, 101 Me. 63 (63 Atl. 298). See also Fouché v. Morris, 112 Ga. 143 (37 S. E. 182); 1 C. J. 532, 533.

The evidence demanded a verdict for the plaintiff in the full amount of the note sued on, and the court did not err in directing such a verdict.

*Judgment affirmed. Jenkins, P. J., and Bell, J., concur.*

ON MOTION FOR REHEARING.

The case of *Steen* v. *Harris,* 81 *Ga.* 681 (8 S. E. 206), relied upon by the plaintiff in error is clearly distinguishable. In that case the purchaser of a piano, who had given notes to the seller which the latter had transferred, proposed to the seller a rescission of the contract. As stated in the opinion in that case, the seller "immediately replied, accepting the proposition, and authorizing him [the purchaser] to hold the piano for them [the seller] and to sell it if he could. At the same time, they wrote to Baldwin & Co., [the transferee of the notes] saying they would take up the notes pay the discount, etc., which they did. The notes were taken up,

put in a separate envelope, marked 'Gardner's notes,' and held subject to his order, and Steen and Marshall [the seller] so wrote him to Florida, whither he had gone after making the offer of rescission." The title to the piano passed from the purchaser to the seller by virtue of this contract. The property was afterwards levied on under an attachment against Gardner the purchaser, and the seller, Steen and Marshall, filed claim of title thereto. The court held that the finding that the property was not subject to the levy was authorized. It clearly appears in that case that this executory contract, by which the piano was to be returned and the notes surrendered, by its express terms constituted a rescission of the contract and therefore an accord and satisfaction of the original debt. In *Cottrell* v. *Merchants Bank,* 89 *Ga.* 508 (15 S. E. 944) Judge Simmons states, in reference to that case, that "the rescission was executed in part at least before the levy, though possession remained in the vendee." See *Rhode Island Locomotive Works* v. *Empire Lumber Co.,* 91 *Ga.* 639 (17 S. E. 1012) ; *Daniel* v. *Burson,* 16 *Ga. App.* 39 (84 S. E. 490). In the case at bar there is no evidence to authorize any inference that it was agreed between the plaintiff and the defendant that the plaintiff should be considered as holding title to the land free from the defendant's equity in the land as a purchaser, that the defendant's possession of the land was for the plaintiff's benefit, or that the plaintiff had agreed to a cancellation of the note and was holding it for the defendant's benefit. *Cheek* v. *McWhorter,* 29 *Ga. App.* 109 (113 S. E. 812), is not in point.

There is a distinction between a rescission of a contract of sale by a subsequent agreement between the parties and an offer to rescind by the purchaser as a matter of right upon the ground of fraud. The contract of rescission in the former case is governed by the law with reference to accord and satisfaction, and a mere executory agreement to rescind, where nothing is executed, is not, in the absence of an express agreement to that effect, an accord and satisfaction of the debt. Civil Code (1910), §§ 4304, 4305; *Hoffman* v. *Franklin Motor Car Co.,* 32 *Ga. App.* 229 (6) (122 S. E. 896) ; *Long* v. *Scanlan,* 105 *Ga.* 424 (31 S. E. 436) ; *Brunswick & Western R. Co.* v. *Clem,* 80 *Ga.* 534 (7 S. E. 84).

*Rehearing denied. Jenkins, P. J., and Bell, J., concur.*